UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
| | |
|---|---|
| In re | **OPINION** |
| | **AND ORDER** |
| TELIGENT SERVICES, INC., et al., | |
| | Chapter 11 |
| Debtors. | No. 01-12974 |
| | (Substantively |
| ------------------------------------------------------X | Consolidated) |
| SAVAGE & ASSOCIATES, P.C. as the | |
| Unsecured Claim Estate Representative for | |
| and on behalf of TELIGENT, INC., et al., | |
| | |
| Plaintiff-Appellant, | Adversary Proceeding |
| | No. 03-03378 |
| - against - | |
| | 05 Civ. 7277 (SAS) |
| WILLIAMS COMMUNICATIONS, et al., | |
| | |
| Defendants-Appellees. | |
------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

   This bankruptcy appeal arises out of an adversary proceeding initiated by Savage and Associates, P.C. ("Savage") as the unsecured claim estate representative for and on behalf of Teligent, Inc. and twenty one other debtors. Savage seeks to avoid preferential payments allegedly made by Teligent to Williams Communications Solutions ("NextiraOne") and Williams Communications ("Wiltel") during the ninety day period ("Preference Period")

-1-

prior to Teligent's voluntary Chapter 11 Bankruptcy filing.[1]

In a memorandum opinion, the Bankruptcy Court held that (1) Savage failed to timely serve Wiltel with the complaint pursuant to Federal Rule of Civil Procedure 4(m) and Federal Rule of Bankruptcy Procedure 7004(a); (2) Savage did not show "good cause" for the thirteen month delay; (3) the circumstances did not call for the court to exercise its discretion in deeming Savage's late service as timely; (4) Savage may not amend the complaint to include Wiltel as a defendant because the amendment does not relate back to the original complaint; and (5) Teligent did not remit any of the payments to NextiraOne during the Preference Period.[2]  Accordingly, the Bankruptcy Court (1) granted Wiltel's Rule 12(b)(5) motion to dismiss for lack of proper service, (2) denied Savage's motion to amend the complaint, and (3) granted NextiraOne's summary judgment motion to dismiss the complaint.[3]

The issues raised on appeal are (1) whether the Bankruptcy Court abused its discretion in holding that Savage did not show good cause for its

---

[1] *See* Complaint ("Compl.") ¶¶ 3-21.

[2] *See Savage & Assocs. v. Williams Commc'ns* (*In re Teligent Servs., Inc.*), 324 B.R. 467, 471-78 (Bankr. S.D.N.Y. 2005).

[3] *See id.* at 478.

thirteen month delay in effecting service on Wiltel; (2) whether the Bankruptcy Court abused its discretion in refusing to deem the delayed service as timely under the Federal Rules of Civil Procedure; (3) whether the Bankruptcy Court abused its discretion in denying Savage's motion to amend the complaint; and (4) whether the Bankruptcy Court erred as a matter of law in granting NextiraOne's motion for summary judgment.[4] For the following reasons, the Bankruptcy Court's memorandum opinion is affirmed in its entirety.

## I. BACKGROUND

A brief review of the relevant facts and procedural history are set forth below. For a full recitation, see the Bankruptcy Court's May 13, 2005 Opinion and Order.[5]

Teligent filed a voluntary Chapter 11 bankruptcy petition on May 21, 2001. In the restructuring plan, Savage was appointed as the debtors' representative in charge of recovering preferential creditor payments made by Teligent during the Preference Period.[6] Seeking to avoid payments in the amount

---

[4]  *See* Memorandum of Law for Petitioner-Appellant Savage & Associates as the Unsecured Claim Estate Representative for and on behalf of Teligent, Inc., et al. ("Appellant's Mem.") at 1-2.

[5]  *See Savage*, 324 B.R. at 474.

[6]  *See id.*

of $313,180.89 made to "Williams Communications" Savage filed a complaint on May 14, 2003, one week before the statute of limitations expired on those claims.[7] Savage initially served Williams Communications Solutions – the former Williams entity now known as NextiraOne.[8] Savage did not serve Williams Commnunciations, the former Williams entity now known as Wiltel, notwithstanding the fact that Teligent's vendor records indicated that Wiltel received at least four of the five transfers Savage sought to avoid.[9]

Upon receiving the complaint, NextiraOne learned that it was not the recipient of the transfers.[10] NextiraOne informed Savage of that fact and suggested that Savage serve the correct defendant during the 120-day service

---

[7]  See Compl. Intro. (naming "Williams Communications" as the defendant).

[8]  See Fed. R. Civ. P. 4 (providing 120 days to effectuate service). See also Appellant's Mem. at 7.

[9]  Savage disputes that Teligent had records of Wiltel's name and address notwithstanding the fact that Teligent named Wiltel as a creditor in its Chapter 11 bankruptcy filing and pursued a separate Preference Period lawsuit against Wiltel. Savage also claims that Teligent had only one vendor code for all Williams' entities, but this is dubious and irrelevant because Teligent's listing of both Williams Communication and Williams Communication Solutions as vendors in its Chapter 11 filing demonstrates Teligent's awareness of the distinct entities.

[10]  See NextiraOne's Reply Memorandum of Law ("Reply") at 3.

period.[11] In an email exchange with counsel for Wiltel, Savage acknowledged its confusion regarding the relationship and roles of each Williams entity.[12] Thus, Savage understood that it may have served the wrong defendant but nevertheless pursued its suit against NextiraOne through the discovery phase of the proceedings.[13] Throughout discovery, NextiraOne conveyed to Savage repeatedly that it was not the actual recipient of the transfers at issue.[14]

Seventeen months after filing the complaint, at the deposition of George Vareldzis, a key financial officer for NextiraOne, Savage learned yet again

---

[11] *See id. See also* Fed. R. Civ. P. 4(m) (providing that service must be made within 120 days after filing the action).

[12] In one email dated August 26, 2003, Denise Savage, lead counsel for Savage, wrote to Andrew Turner, lead counsel for Wiltel, explaining why Savage would not drop the lawsuit against Wiltel in the separate proceeding even though it had perhaps served the wrong defendant: "The case cannot be dismissed as I will lose the statute of limitations. We will just endeavor to find the right company." 8/26/03 email from Savage to Turner, Sub-Exhibit ("Sub-Ex.") F to Exhibit ("Ex.") 10, Record on Appeal ("R."). In another email to Turner dated August 29, 2003, Savage further admitted that NextiraOne may not have been the recipient of the transfers at issue: "I believe the issue here is that we served the wrong party. I will not dismiss the case but will not proceed against your client." 8/29/03 email from Savage to Turner, Sub-Ex. F to Ex. 10, R. ("8/29/03 Savage email"). Thus, Savage refused to voluntarily withdraw the complaint because the statute of limitations had run on the Preference Period claims and Savage would be barred from pursuing those claims.

[13] *See* Reply at 3.

[14] *See id.* at 4.

that NextiraOne had never received the transfers at issue.[15]  In light of the Vareldzis deposition, Savage finally acknowledged that Wiltel was the proper defendant, obtained a second summons from the court, and served Wiltel with the original complaint.[16]  Savage also requested leave of the court to amend the complaint to add Wiltel as a defendant.

Upon receipt of the complaint, Wiltel filed a motion to dismiss on the ground that Savage's service was untimely as it was made thirteen months after the statute of limitations had expired.[17]  Meanwhile, NextiraOne filed a motion for summary judgment to dismiss the complaint claiming, as it had all along, that it was not the recipient of the transfers at issue.

On January 19, 2005, Bankruptcy Judge Alan L. Gopper heard arguments on Wiltel's motion to dismiss.  During oral argument, Wiltel's counsel admitted on the record that Wiltel had in fact been the recipient of all of the Preference Period transfers at issue.[18]  Based on this admission, along with Savage's lack of evidence to the contrary, the Bankruptcy Court granted

---

[15]  *See id.*

[16]  *See* Appellant's Mem. at 8.

[17]  *See id.* at 10.

[18]  *See id.*

NextiraOne's summary judgment motion to dismiss.[19]

The Bankruptcy Court also granted Wiltel's motion to dismiss pursuant to Rule 12(b)(5) on the ground that Savage had failed to show good cause for its delay in serving the proper defendant and that the circumstances did not warrant exercising the court's discretion to extend the service deadline under Rule 4(m).[20] The court found that Savage had unjustifiably refused to heed NextiraOne's early warnings that Savage had served the wrong Williams entity. The court also concluded that Wiltel's defense would be prejudiced by this delay because it had lost key employees who possessed knowledge of Wiltel's financial relationship with Teligent.[21] Lastly, after reviewing the evidence, the court denied Savage's motion to amend the complaint.[22]

## II.  LEGAL STANDARD

### A.  Appeals of Bankruptcy Court Orders

#### 1.  Final Order

The district courts are vested with appellate jurisdiction over

---

[19]  *See Savage*, 324 B.R. at 478.

[20]  *See id.* at 472-77.

[21]  *See id.* at 474.

[22]  *See id.* at 478.

bankruptcy court rulings.[23] Final orders of the bankruptcy court may be appealed to the district court as of right.[24] An order is final if "[n]othing in the order . . . indicates any anticipation that the decision will be reconsidered."[25]

### 2. Standard of Review

A district court functions as an appellate court in reviewing judgments rendered by bankruptcy courts.[26] Findings of fact are reviewed for clear error.[27] A finding of fact is clearly erroneous if the court is "'left with the definite and firm conviction that a mistake has been committed.'"[28] Thus, if the factual findings of the bankruptcy court are "plausible in light of the record

---

[23] See 28 U.S.C. § 158(a).

[24] See id. § 158(a)(1).

[25] In re Palm Coast, Matanza Shores Ltd. P'Ship, 101 F.3d 253, 256 (2d Cir. 1996).

[26] See In re Sanshoe Worldwide Corp., 993 F.2d 300, 305 (2d Cir. 1993) ("[Appellant] relies on several cases for the reasonable proposition that the district court acts as an appellate court in reviewing a bankruptcy court's judgments.").

[27] See Fed. R. Bankr. P. 8013 ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). Accord In re Cody, Inc., 338 F.3d 89, 94 (2d Cir. 2003).

[28] In re Manville Forest Prods. Corp., 896 F.2d 1384, 1388 (2d Cir. 1990) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

viewed in its entirety," this Court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[29] A bankruptcy court's conclusions of law, by contrast, are reviewed de novo.[30]

A bankruptcy court's exercise of its equitable authority is reviewed for abuse of discretion.[31] A court abuses its discretion when it makes "(i) a decision 'rest[ing] on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding,' or (ii) [makes] a decision that, 'though not necessarily the product of a legal error or a clearly erroneous factual finding[,] cannot be located within the range of permissible decisions.'"[32] "Moreover, 'to further the purposes of Chapter 11 reorganization, a bankruptcy judge must have substantial freedom to tailor his orders to meet differing

---

[29]   *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

[30]   *See In re Cody*, 338 F.3d at 94; *In re 139-141 Owners Corp.*, 313 B.R. 364, 367 (S.D.N.Y. 2004).

[31]   *See Schwartz v. Aquatic Dev. Group, Inc.* (*In re Aquatic Dev. Group, Inc.*), 352 F.3d 671, 673 (2d Cir. 2003). *See also Yadidi v. Herzlich* (*In re Yadidi*), 274 B.R. 843, 847 (9th Cir. BAP 2002) ("The application of § 105 power is reviewed for abuse of discretion.").

[32]   *Schwartz*, 352 F.3d at 678 (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

circumstances.'"[33]

## III. DISCUSSION

### A. The Bankruptcy Court Correctly Held that Savage Did Not Show Good Cause for Its Delayed Service

Savage sought to serve Wiltel seventeen months after filing the original complaint and thirteen months after the 120 service period had expired. Federal Rule of Civil Procedure 4(m) allows for a plaintiff to serve a defendant after the 120 day service period in certain circumstances.[34] The rule provides, in pertinent part:

> [I]f the plaintiff shows good cause for the failure [to serve the defendant within 120 days], the court shall extend the time for service for an appropriate period.[35]

Accordingly, Savage had the burden of proving good cause for the thirteen month delay in service.[36]

In an attempt to do so, Savage claims that Teligent's records did not

---

[33] *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y.1992) (quoting *The Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1069 (2d Cir. 1983)).

[34] *See* Fed. R. Civ. P. 4(m).

[35] *Id.*

[36] *See Mason Tenders Dist. Council Pension Fund v. Messera*, No. 95 Civ. 9341, 1997 WL 221200, at *3 (S.D.N.Y. Apr. 1, 1997).

reflect Wiltel and NextiraOne as distinct entities.[37] Savage only found one vendor number for all the Williams entities.[38] Savage also points out that the various names and addresses on the checks and the overlapping names and roles of each Williams entity accounted for Savage's confusion.[39] Some initial confusion on the part of Savage may have been justified – Savage was responsible for avoiding thousands of payments made by Teligent during the preference period, and each Williams entity's name is fairly similar.

However, the possible confusion by Savage does not excuse a thirteen month delay in service on Wiltel. Three of the checks did have Wiltel's former name on them, four of the checks were addressed directly to Witlel, and all of the checks had Wiltel's address somewhere on the check.[40] Despite Savage's representation to the contrary, it did understand Wiltel to be a separate creditor from NextiraOne. Indeed, Savage was pursuing a separate preference period claim against Wiltel at the time of this action.[41] Using Teligent's records, Savage could

---

[37] *See* Appellant's Mem. at 6.

[38] *Id.*

[39] *See id.* at 6-7.

[40] *See id.* at 5-6.

[41] *See Savage*, 324 B.R. at 471.

have matched the addresses on the checks with Teligent's records to discover that at least four of the five were sent to Wiltel.[42]

Savage simply did not perform a diligent search of the records before serving NextiraOne rather than Wiltel.[43] Early in the proceedings Savage expressed its confusion regarding which Williams defendant to serve for each Preference Period claim, as evidenced by the email communications between Savage and Turner. In its confusion, Savage could have filed for an extension of service under Federal Rules of Civil Procedure 6(b), but it did not do so. Given the record, the Bankruptcy Court did not abuse its discretion in holding that Savage's efforts were unreasonable.[44]

On the other hand, Savage will be prejudiced by the court's decision to dismiss the claim against Wiltel because the statute of limitations has run on

---

[42] Teligent's chapter 11 bankruptcy filing lists Wiltel as a separate vendor with an address that matches the address on four of the five checks at issue.

[43] *See, e.g., In re Motel 6 Sec. Litig. v. Hugh Thrasher*, No. 93 Civ. 2183, 1995 WL 431326, at *2 (S.D.N.Y. July 20, 1995) (holding that a party's diligence is a factor to consider in determining good cause).

[44] *See In re Motel 6 Sec. Litig.*, No. 93 Civ. 2183, 1995 WL 649930, at *1 (S.D.N.Y. Nov. 6, 1995) (any showing of good cause will be balanced against "'(1) the plaintiff's reasonable efforts to effect service and (2) the prejudice to the defendant from delay'") (quoting *National Union Fire Ins. Co. v. Barney Assocs.*, 130 F.R.D. 291, 293 (S.D.N.Y. 1990)).

Savage's claims against Wiltel. Courts have often attempted to avoid dismissal based on late service where a refiling is prohibited by statute. But the Bankruptcy Court properly balanced this prejudice against Savage's lack of diligence and the prejudice to Wiltel and concluded that the prejudice to Savage did not outweigh these other factors.[45] In short, Savage did not show good cause for delaying proper service on Wiltel for seventeen months.[46]

### B. The Bankruptcy Court Did Not Abuse Its Discretion in Refusing to Deem Savage's Late Service to Be Timely

The Bankruptcy Court has the discretion to extend the period for service of the complaint absent a showing of good cause.[47] The court chose not to

---

[45] Wiltel has shown that prior to and during the delay in service, several employees who worked on the transactions between Teligent and Wiltel left the company, and that the loss of these employees would impede Wiltel's ability to defend against this adversarial proceeding.

[46] *See National Union Fire Ins. Co.*, 1994 WL 463009, at *3 ("Where it is apparent that an attorney's ignorance, inadvertence, or 'misplaced reliance' promulgated the failure to serve process, courts have shown no leniency."). *See also Sullivan v. Hall (In re Hall)*, 222 B.R. 275, 280 (Bankr. E.D. Va. 1998) ("Plaintiff has done nothing to warrant the Court's exercise of its discretion. To allow relief under these circumstances would otherwise render the procedural requirements of the Bankruptcy Rules and Rules of Civil Procedure a nullity, and contradict Chapter 7's expeditious fresh start policy by extending the 120 days and the statute of limitations indefinitely.").

[47] *See AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt.*, 197 F.R.D. 104, 109 (S.D.N.Y. 2000).

exercise that discretion, however, after considering the entire record and the potential prejudice to Savage.[48] Savage offers no evidence that the Bankruptcy Court relied on any clearly erroneous facts or any mistake of law. Because the Bankruptcy Court did not abuse its discretion, its decision cannot be overturned.[49]

### C. The Bankruptcy Court Correctly Denied Savage's Motion to Amend the Complaint Pursuant to Rule 15(c)

Around the same time that Savage finally attempted to serve Wiltel with the original complaint, Savage sought to amend that complaint by adding Wiltel as a defendant.[50] When a party seeks to add a defendant after the 120 day period for service, the amendment must "relate back" to the original complaint pursuant to Rule 15(c), which provides in pertinent part:

> (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
>
>           \*   \*   \*
>
> (2) the claim or defense asserted in the amended pleading arose out of

---

[48] *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1306 (3d Cir. 1995) ("the running of the statute of limitations does not require the district court to extend time for service of process."). *See also Rupert v. Metro-North Commuter R.R.*, No. 95 Civ. 4283, 1996 WL 447745, at *2 (S.D.N.Y. Aug. 7, 1996).

[49] *See Schwartz*, 352 F.3d at 678.

[50] *See* Appellant's Mem. at 8.

> the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment *(A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.*[51]

Rule 15(c) permits a time-barred claim to be prosecuted under the "relation back" doctrine. The rule is "intended to preserve legitimate suits despite . . . mistakes of law at the pleading stage."[52]

The Bankruptcy Court correctly found that Wiltel did not possess the knowledge required to satisfy Rule 15(c)(3).[53] For purposes of the relation-back doctrine, the court requires "more than mere awareness of the suit."[54] In order to satisfy Rule 15(c)(3), Savage was required to show that Wiltel learned of the NextiraOne claims with enough specificity to realize that it – rather than

---

[51] Fed. R. Civ. P. 15(c) (emphasis added). *See In re Enron Corp.*, 298 B.R. 513, 522 (Bankr. S.D.N.Y. 2003) (holding that Rule 15(c) is the only vehicle for adding a party after the statute of limitations has run).

[52] *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 36 (2d Cir. 1996).

[53] Both parties concede that Wiltel's amendment satisfies Rule 15(c)(2).

[54] *Keller v. Prince George's Cty.*, 923 F.2d 30, 33-34 (4th Cir. 1991).

NextiraOne – was the correct defendant.[55]

It is true that Wiltel's counsel learned of these proceedings within the 120 day service period during an email exchange with Savage regarding a different proceeding.[56] In that proceeding, Savage sought to avoid Preference Period transfers in the amount of $604,824.21 made to Wiltel.[57] Much like this proceeding, Savage had served the wrong defendant and Turner was attempting to negotiate a voluntary dismissal of the action.[58] In the course of these negotiations, Denise Savage wrote to Turner: "I have another matter against Williams Communications and am dealing with Jeffrey Carbino. Are you familiar with this other matter?"[59] Turner replied that he was not familiar with Carbino. Turner eventually learned that Carbino is in fact the attorney for NextiraOne – not Wiltel – and represents NextiraOne in the instant proceeding.

Savage claims that Turner "must have" learned the specifics of the

---

[55] *See id.*

[56] See *Savage,* 324 B.R. at 474, for an account of that proceeding brought by Savage against Wiltel.

[57] *See id.* at 475.

[58] *See* Wiltel's Reply Memorandum of Law at 5.

[59] 08/29/03 Savage email.

claims brought against NextiraOne during his conversation with Carbino.[60] But the call was simply an attempt to ascertain Carbino's role at Wiltel in response to Savage's email.[61] Turner denies discussing the details of Savage's NextiraOne claims with Carbino,[62] and Savage has not presented additional evidence suggesting that Turner knew the specifics of Savage's claims against NextiraOne. Merely knowing of a different adversarial proceedings by Savage does not constitute notice for purposes of the relation back doctrine.[63] Accordingly, the Bankruptcy Court held that the amendment did not relate back to the original complaint.[64]

Savage further claims that Turner's conversation with Carbino should have, at the very least, caused him to be concerned that Wiltel was involved in the

---

[60] *See* Appellant's Mem. at 27.

[61] *See* 08/29/03 Savage email.

[62] *See* 1/12/05 Affidavit of Andrew Turner, Counter-Designation of Wiltel Communications, LLC, of Items to Be Included in Record on Appeal, ¶¶ 5-6.

[63] *See Keller*, 923 F.2d at 33-34. *See also Gleason v. McBride*, 869 F.2d 688, 693 (2d Cir. 1989) (holding that even if two entities use the same counsel this does not satisfy the notice requirement under Rule 15(c)). "[T]here must be some showing that the attorney(s) knew that the additional defendants would be added." *Id.*

[64] *See Savage*, 324 B.R. at 477.

proceeding. But a non-party has no duty to discover that someone is trying to sue him. Given the lack of notice to Wiltel, the Bankruptcy Court did not abuse its discretion in holding that the amendment did not relate back to the original complaint.

### D.  The Bankruptcy Court Correctly Granted NextiraOne's Summary Judgment Motion

Savage also appeals the Bankruptcy Court's decision to grant summary judgment for NextiraOne.[65] While it may have initially appeared that NextiraOne received one or two of the transfers at issue, Wiltel's counsel admitted on the record in open court that Wiltel had received all five transfers at issue. In reliance on Wiltel's admission that it was the recipient of all five checks, the Bankruptcy Court granted summary judgment in favor of NextiraOne.[66] Because Savage presents no basis for overturning this decision, it must be affirmed.

---

[65]  Although Savage purports to challenge the Bankruptcy Court's summary judgment decision dismissing NextiraOne as a party in its statement of the issues on appeal, it does not address this argument in its Memorandum of Law.

[66]  If Wiltel had attempted at some later date to deny that it received the check addressed to NextiraOne, it would have been judicially estopped from doing so. *See In re Adelphia Commc'ns.*, No. 07 Civ. 1172, 2007 WL 1002127, at *2 (S.D.N.Y. Apr. 2, 2007) ("when a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, it may not thereafter, simply because its interests have changed, assume a contrary position").

## IV.   CONCLUSION

For the reasons discussed above, the Bankruptcy Court's Order dismissing the claims against Wiltel and granting summary judgment in favor of NextiraOne is affirmed. The Clerk of the Court is directed to close this appeal.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           July 5, 2007

## - Appearances -

**For Appellant Savage & Associates, P.C.:**

Denise Lynn Savage, Esq.
Savage & Associates, P.C.
Croton-on-Hudson, New York 10520-0804
(914) 271-5150

**For Appellee NextiraOne:**

Brian E. O'Connor, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

**For Appellee Wiltel:**

James S. Carr, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
(212) 808-7573

Andrew R. Turner, Esq.
Conner & Winters, LLP
3700 First Place Tower
15 East Fifth Street, Suite 3700
Tulsa, Oklahoma 74103
(918) 586-8672